

**R O M S P E N**
investment corporation

**Our File:  8212**

Effective as of August 31, 2015

Symmetry Asset Management Inc.
1250 Hayter Road
Edmonton, AB, T6S 1A2
<u>Attention:  Dan White</u>

Dear Sirs:

**Re:        $40 Million (Maximum) First Mortgage Credit Facility (the "Loan")**
**Eco-Industrial Business Park (Lot 11), Edmonton, AB**
**Various parcels, Lamont, AB**
**3501 Ed Bluestein Blvd., Austin, TX**

Reference is made to the amended and restated commitment letter dated July 30, 2015 (the "**Commitment**"), among Romspen Investment Corporation, as trustee (the "**Lender**"), Lot 11 Limited Partnership, Eco Energy Limited Partnership, Eco Energy GP Ltd., Eco Energy Limited Partnership and Absolute Energy Resources Inc.  (the "**Borrowers**") .

All capitalized words used herein, unless otherwise defined herein, shall have the meaning ascribed to them in the Commitment, as amended by this Supplement No. 1 (this "**Supplement**").

The parties hereto wish to further amend the Commitment and the Loan terms, and agree as follows:

1.        <u>**Amendments**</u>

The Commitment is hereby amended as follows:

(a)        Section 2 "Covenantor" is amended by deleting "Reserved" and inserting the following:

> "The obligations and liabilities of the Borrowers in respect of all tranches of the loan related to the Austin Property (defined below) will be guaranteed, jointly and severally, by all persons or entities owning, directly or indirectly, an interest in the Texas GP or the Texas LP, other than Richard Weldon (each, a "**Covenantor**").

(b)        Section 3 "Approved Loan Amount" is amended by inserting the following as the fourth sentence thereof:

"The approved second tranche of the Loan is approximately $545,000. The approved third tranche of the Loan is approximately $137,000.  The approved fourth tranche of the Loan is Canadian dollar equivalent of approximately US$5.2 million.";

(c)     Section 5 "Advance Dates" is amended by inserting the following at the end thereof:

"The second tranche was advanced on August 31, 2015.  The third tranche was advanced on September 16, 2015.  The fourth tranche will be advanced on or around September 29, 2015."

(d)     Section 8 "Use of Funds" is amended by inserting the following at the end thereof:

"The proceeds of the second, third and fourth tranches of the Loan will be used to (a) assist the Borrowers in providing loans and/or capital contributions to the Covenantors, to enable Covenantors to make a capital contribution to (or purchase ownership interests in) MOS8 Partners, Ltd., a Texas limited partnership (the "**Texas LP**"), to assist the Texas LP in purchasing the property municipally known as 3501 Ed Bluestein Blvd., Austin, TX 78721 (the "**Austin Property**"), to assist Covenantors to acquire membership interests in MOS8 GP, LLC, a Texas limited liability company (the "**Texas GP**"), and (b) to pay fees and transaction costs.";

(e)     Section 25 "Special Provisions" is amended by deleting "Reserved" and replacing it with the following:

25.1  **Appointment of Nominee**

Borrowers and Dan White hereby appoint Richard Weldon (the "**Nominee**"), as their nominee and agent, to, on their behalf:

(a)     receive the proceeds of the second, third and fourth tranches of the Loan, upon a direction to be executed and delivered by the Borrowers in such form as the Lender may require;

(b)     negotiate and enter into, as a limited partner, the limited partnership agreement for the Texas LP;

(c)     negotiate and enter into, as a member and manager thereof, the operating agreement for the Texas GP;

(d)     negotiate, execute and deliver, whether as limited partner of the Texas LP or as a member or manager of the Texas GP, any and all agreements, instruments, certificates or other documents necessary to complete the purchase of the Austin Property by the Texas LP, and to provide for the development and management of the Austin Property, which development and management agreements may be with affiliates of, or parties related to the Lender; and

(e)     negotiate, execute and deliver, whether as limited partner of the Texas LP or as a member or manager of the Texas GP, any and all agreements, instruments, certificates or other documents necessary or required by the first lien lender, to complete the first mortgage loan secured by a first-ranking deed of trust of the Austin Property.

## 25.2  Pledge of Ownership of Texas GP and Texas LP

Borrowers and Dan White shall advise the Lender of the proposed ownership structure of the Texas GP and the Texas LP within 2 weeks of the Advance of the fourth tranche.   The Lender shall approve such ownership structure, in its sole discretion, acting reasonably.   Upon Lender's approval, Lender will cause the Nominee to transfer the Nominee's ownership/partnership interests of the Texas GP and the Texas LP to the Covenantors approved by the Lender.

As additional security for the Loan, Borrowers and/or Dan White shall, or shall cause any Covenantor owning, directly or indirectly, an ownership interest in the  Texas GP or the Texas LP, to immediately thereafter pledge all direct or indirect ownership interests in the Texas GP or the Texas LP to the Lender or its nominee, as the Lender may require, and if such interests are certificated, to deliver such certificates to the Lender together with a power of attorney and transfer in blank.  Borrowers and Dan White authorize, and will cause any Covenantor to authorize, the Lender to register such pledges in the applicable personal property registries in the applicable jurisdictions.  The forms of pledges will be determined by the Lender in its sole discretion, and will include such negative covenants, including, without limitation, covenants regarding transfers, encumbrances and voting, as the Lender may require.

## 25.3   Profit Participation

As a collateral advantage to the Lender, and in consideration of the Lender agreeing to make the Loan to the Borrowers (which Loan will be of a material benefit to the Covenantors), at the interest rates provided herein and on the other terms and conditions set out herein, the Borrowers and Dan White agree to pay to the Lender (or its designee or nominee), and agree to cause the Covenantors to agree to pay to the Lender (or its designee or nominee), in addition to all other amounts payable hereunder or in any other Security, 15% of the partnership distributions or member distributions paid to the Covenantor owning either the limited partnership interests of the Texas LP or the membership interests of the Texas GP (the "**Participation Fee**"), on a pari passu basis between the Lender and such limited partner or member.

For greater certainty, no deduction or allocation of expenses may be made for any overhead, salaries to Dan White or any other employee of the Borrowers or any Covenantor or any other entity, or any other expenses paid to any related party.

For greater certainty, the Lender's (or its designee's or nominee's) entitlement to the Participation Fee will continue regardless of the repayment of all or part of any indebtedness under the Loan.

While this is a present agreement to pay the Participation Fee, the terms upon which the Participation Fee is to be payable will be set out in an agreement (the "**Participation Fee Agreement**"), containing these terms and other terms and conditions required by the Lender, in its sole discretion. The Lender's (or its designee's) entitlement to receive, and the Borrowers' and/or Covenantors' obligation to pay, the Participation Fee shall be secured by such additional security as the Lender shall determine, in its sole discretion, and the Borrowers and Dan White agree to, and will cause the Covenantors and other entities to, execute such additional documents and agreements as the Lender may require to effect same.

The Borrowers and Dan White will cause the Covenantor with the entitlement to the distributions from the Texas LP or the Texas GP to give an irrevocable direction to the Texas GP and the manager, respectively, to pay the portion of the distributions representing the Participation Fee directly to the Lender (or its designee or nominee).

### 25.4  Asset/Property Management

Borrowers, Dan White will, or will cause the entities directly or indirectly owning the Texas GP or the Texas LP, within 2 weeks of the date of the Advance of the fourth tranche, to enter into asset and property management agreements with such entities as the Lender may direct or require ("**Asset Manager**"). Such asset or property management entities may be related to or affiliated with the Lender. Such agreements will contain provisions restricting the ability of the entity(ies) owning partnership interests in the Texas LP and membership interests in the Texas GP from making decisions under the partnership agreement and/or operating agreement, as applicable, without the prior consent of the Lender or Asset Manager.

In addition, Borrowers and Dan White acknowledge that the Texas LP has entered or will enter into an asset/property management agreement with an entity affiliated with or related to the Lender, and under the terms of such agreement, such entity will be entitled to certain fees as set out in such agreement, including, but not limited to, asset management, financing, leasing, and disposition fees. Borrowers and Dan White hereby, on their own behalf, and on behalf of the Covenantors, consent to the terms of such agreements.

### 25.5  Default

Any failure of Borrowers or Dan White to comply with the time requirements in this Section will constitute an Event of Default under the Commitment and the Security.

5

**2.    Security Amendments**

The Security will be amended to reflect these Commitment amendments, to the satisfaction of the Lender and its solicitors.  The Borrowers and Dan White agree to, and agree to cause Covenantors to, execute and deliver, upon request by the Lender, such further agreements, documents, instruments and assurances as may be required by the Lender in order to confirm and give effect to the provisions of this Supplement.

**3.    Representation and Warranty**

To induce the Lender to enter into this Supplement, each Borrower, as applicable, hereby reaffirms to the Lender that, as of the date hereof, its representations and warranties contained in the Commitment, as amended by this Supplement, and except to the extent such representations and warranties relate solely to an earlier date, are true and correct and additionally represents and warrants as follows:

(a)    the execution and delivery of this Supplement and the performance by it of its obligations under this Supplement:  (i) are within its corporate powers, (ii) have been duly authorized by all necessary corporate action, (iii) have received all necessary governmental approval (if any were required), and (iv) do not and will not contravene or conflict with any provision of applicable law or any of its constating documents or of any material agreement, judgment, license, order or permit applicable to or binding upon it; and

(b)    each of the Commitment, as amended by this Supplement, and the Security is and will continue to be a legal, valid and binding obligations, enforceable in accordance with its terms.

**4.    Conditions**

In addition to the conditions contained in the Commitment or the Security, the obligations of the Lender under this Supplement are subject to the satisfaction or waiver of the following conditions:

(a)    the parties other than the Lender shall have executed and delivered this Supplement, such other additional or amended security, confirmations of existing Security, documents, certificates, instruments and agreements, as are contemplated by this Supplement or as the Lender or its counsel may reasonably require, all in form and content satisfactory to the Lender, and registered if required by the Lender;

(b)    payment of the Lender's fees and out-of-pocket costs incurred in preparing, negotiating and executing this Supplement and the documents contemplated hereby, including without limitation, the fees and expenses of the Lender's consultants and outside counsel.  Such costs may be deducted by the Lender from any Advance.

5.      **References**

Each of the parties hereto acknowledges that all references to "this Commitment" in the Commitment shall mean the Commitment, as amended by this Supplement.

6.      **Miscellaneous**

Nothing in this Supplement shall be construed or interpreted as novating any obligations, terms or conditions of the Commitment, the Security or any other document entered into pursuant thereto or contemplated thereby (the "**Loan Documents**"), all of which obligations, terms and conditions remain in full force and effect, without any amendment or modification thereto, save and except only as expressly amended or supplemented by this Supplement.  The parties hereby ratify and confirm the Loan Documents.

The terms and conditions of this Supplement shall be governed by and interpreted in accordance with the laws of the Province of Alberta and the Borrower and each Covenantor hereby irrevocably attorn to the jurisdiction of the courts of the Province of Alberta.

In the event of any inconsistency between the terms and conditions of this Supplement and the terms and conditions of the Commitment, this Supplement shall prevail.

This Supplement may be executed in one or more counterparts, each of which so executed will constitute an original and all of which will constitute one and the same agreement.  This Supplement may be executed by the parties and transmitted by facsimile or other electronic means and if so executed and transmitted this Supplement will be for all purposes as effective as if the parties had delivered an executed original agreement.

Yours truly,

**ROMSPEN INVESTMENT CORPORATION**

By:      _____

*I have authority to bind the Corporation.*

The undersigned accept this Supplement as September _____, 2015.

**BORROWERS:**

**LOT 11 GP LTD., IN ITS CAPACITY AS GENERAL PARTNER OF LOT 11 LIMITED PARTNERSHIP**

Per:_____
Name:

Title:

Per:_____
Name:
Title:

*I/We have authority to bind the Corporation.*


**ECO ENERGY GP LTD., IN ITS CAPACITY AS GENERAL PARTNER OF ECO ENERGY LIMITED PARTNERSHIP**

Per:_____
Name:
Title:

Per:_____
Name:
Title:

*I/We have authority to bind the Corporation.*


**ABSOLUTE ENERGY RESOURCES INC.**

Per:_____
Name:
Title:

Per:_____
Name:
Title:

*I/We have authority to bind the Corporation.*

_____
**Dan White**

## AUTHORIZATION AND DIRECTION TO PAY

TO:      **ROMSPEN INVESTMENT CORPORATION AS TRUSTEE**
         (the "**Lender**")

AND TO:  **RICHARD WELDON**
         (the "**Nominee**")

AND TO:  **WITTEN LLP**
         **POLSINELLI LLP**

RE:      **ROMSPEN INVESTMENT CORPORATION AS TRUSTEE**
         **Amended and Restated Commitment Letter dated July 31, 2015,  as amended**
         **$40,000,000.00 Loan (the "Loan") to LOT 11 LIMITED**
         **PARTNERSHIP,** ~~ECO ENERY GP LTD., ECO ENERGY LIMITED PARTNERSHIP,~~
         **ABSOLUTE ENERGY RESOURCES INC.** ~~AND SYMMETRY ASSET~~
         ~~MANAGEMENT INC.~~
         **(collectively, the "Borrowers")**

With reference to the Loan, this will be your good and sufficient authority to deduct from the proceeds of the June _2ᴬ_, 2016, Loan advance (the seventh tranche of the Loan), and to pay to the parties respectively entitled thereto, those amounts indicated on the Loan advance statement attached hereto.

You are hereby authorized and directed to pay the balance of the Loan advance to the Nominee, or as he may further direct.

~~The undersigned covenant and agree to, and do hereby, release, indemnify and save harmless the~~ Lender and the Nominee, and their respective successors, assigns, heirs ~~and executors,~~ from and against all claims, actions, causes of action, ~~debts, obligations,~~ demands, losses, damages, liabilities, expenses and costs, ~~arising from or~~ with respect to the Lender disbursing funds in accordance ~~with this Authorization~~ and Direction to Pay, which may be incurred by the Lender ~~including without limitation, legal costs on a solicitor and own client basis.~~

This Authorization and Direction to Pay may be executed in several counterparts, and may be delivered by facsimile or by electronic mail in portable document format (PDF), each of which, when so executed, shall be deemed to be an original, and such counterparts together shall constitute one and same instrument and, notwithstanding the date of execution, shall be deemed to bear date as of the date written at the end of this Authorization and Direction to Pay.

2

Dated June 17, 2016.

**LOT 11 LIMITED PARTNERSHIP, by its general
Partner, LOT 11 GP LTD.**

By: _____

By: _____

I/we have the authority to bind the corporation

**ECO ENERGY LIMITED PARTNERSHIP by its
General Partner ECO ENERGY GP LTD.**

By: _____

By: _____

I/we have the authority to bind the corporation

**ECO ENERGY GP LTD.**

By: _____

By: _____

I/we have the authority to bind the corporation

**ABSOLUTE ENERGY RESOURCES INC.**

By: _____

By: _____

I/we have the authority to bind the corporation

**SYMMETRY ASSET MANAGEMENT INC.**

By: _____

By: _____

I/we have the authority to bind the corporation

_____        _____
Witness                                          Dan White

# C E R T I F I C A T E

TO:     ROMSPEN INVESTMENT CORPORATION, AS TRUSTEE (the **"Lender"**)

RE:     Commitment letter dated July 30, 2015, as amended, made between the Lender and Lot 11 Limited Partnership, ~~Eco Energy GP Ltd., Eco Energy Limited Partnership~~, Absolute Energy Resources Inc., ~~Symmetry Asset Management Inc.~~, and ~~Dan White~~ (the **"Borrowers"**) (the **"Commitment"**)

---

The Borrowers hereby request an advance of the seventh tranche of the loan referred to in the Commitment (the **"Loan"**) in the Canadian dollar equivalent of US$1,470,200 plus the Lender's fees and costs (the **"Advance"**). After having made all due inquiry and investigation and to induce the Lender to make the Advance, the Borrowers do hereby certify that:

(a)     each of the representations and warranties made by the Borrowers to the Lender, and contained in:

       (i)     the Commitment Letter;

       (II)     the Security (as defined in the Commitment); and

       (iii)     any other document, material, information or report supplied or delivered to the Lender or to any representative of the Lender by or on behalf of the Borrowers;

       is true and correct as at the date hereof, with the same force and effect as if made on the date of this certificate;

(b)     no act of default has occurred pursuant to or under the Commitment or the Security and no event or circumstance has occurred and no condition exists which will result, either immediately, or with the lapse of time or giving of notice, or both, in the occurrence or existence of an act of default pursuant to or under the Commitment or the Security or in the occurrence or existence of an act of default pursuant to or under any document or agreement executed or delivered by the Borrowers to the Lender in connection with or pursuant to the Commitment;

(c)     no material adverse change has occurred in respect of the financial condition of the Borrowers and no material adverse change has occurred in the financial condition of the Borrowers which would impair the ability of the Borrowers to repay any and all amounts which may become owing to the Lender under the Commitment on the maturity date of the Loan;

(d)     there is no pending or threatened litigation, action, claim or fact known to the Borrowers and not disclosed to the Lender which materially adversely affects or could so affect the lands or other collateral which are the subject matter of the Commitment and the Security or the Borrowers' ability to perform the Borrowers' obligations pursuant thereto;

(e)     all by-laws, regulations, ordinances and orders pertaining to any collateral secured by the Security or any part thereof have been and are being complied with;

- 2 -

(f)     each of the conditions precedent referred to in the Commitment and the Security have been fulfilled and satisfied as of the date hereof;

**IN WITNESS WHEREOF** the Borrowers have executed this Certificate on June 20, 2016.

**LOT 11 GP LTD., in its capacity as GENERAL PARTNER OF LOT 11 LIMITED PARTNERSHIP**

Per: _____
Name: _____
Title: _____

Per: _____
Name:
Title:

*I/We have authority to bind the Corporation.*

**ECO ENERGY GP LTD., IN ITS CAPACITY AS GENERAL PARTNER OF ECO ENERGY LIMITED PARTNERSHIP**

Per: _____
Name:
Title:

Per: _____
Name:
Title:

*I/We have authority to bind the Corporation.*

**ABSOLUTE ENERGY RESOURCES INC.**

Per: _____
Name: _____
Title: _____

Per: _____
Name:
Title:

*I/We have authority to bind the Corporation.*

**SYMMETRY ASSET MANAGEMENT INC.**

Per:_____
Name:
Title:

Per:_____
Name:
Title:

*I/We have authority to bind the Corporation.*


**DAN WHITE**, on behalf of entities to be formed:

_____
**Dan White**