

ROMSPEN
investment corporation

Strictly Private & Confidential

February 1, 2018

Symmetry Asset Management Inc.
#260, 2833 Broadmoor Blvd.
Sherwood Park, AB T8H 2H3
Attention: Dan White

Dear Sirs:

> **Re: Term and Construction Loan**
> **Eightfold Buildings F, H & J and Related Infrastructure**
> **3443 Ed Bluestein Blvd., Austin, Texas**

These are the basic terms of the loan which we propose regarding the above (the "**Loan**"). If these terms are acceptable to you, please execute and return this agreement to us by the Expiration Date.

**Purpose:** To assist Borrower in putting Buildings F, H and J of the Austin Property back in service, and providing certain infrastructure for the Austin Property (the "**Project**").

**Terms:**

**Borrower:** 3443 Zen Garden Limited Partnership (the "**Borrower**").

**Guarantors:** Lot 11 Limited Partnership ("**Lot 11 LP**") and the entities that own the parcels commonly referred to as Lot 9 (also known as Lot E, Plan 5725) and Lot 12 (i.e. the remainder of SW1/4 17-53-23-4) in the Eco-Industrial Business Park. Other guarantors are:

1. Dan White
2. Zen Garden Limited Partnership
3. Eightfold Developments, LLC
4. Eightfold ULC
5. Eightfold Trust
6. Eco-Industrial Business Park Inc.
7. Symmetry Asset Management Inc.
8. Absolute Energy Resources Inc.
9. Cielo Waste Solutions Corp.

162 Cumberland Street, Suite 300 • Toronto, Ontario M5R 3N5 • T: 416-966-1100 • F: 416-966-1161 • www.romspen.com

10. Absolute Environmental Waste Management Inc. (or other entity that is the lessee of a deep well lease on Lot 11)

and any other person with an interest in the Austin Property, the Project, Lot 11, Lot 4 or Lot 12.

Lender is to be satisfied that Guarantors have a minimum aggregate net worth of no less than US$40,000,000, to be maintained at all times while the Loan is outstanding.

**Outstanding Principal Amount:**

Under a separate loan (Lender's loan #8212), Lender has advanced to date approximately CAD$31,710,000 to Lot 11 LP, guaranteed by, among others, the Borrower. The Lender may advance an additional amount of (the $CAD equivalent of) approximately US$3.0 million between the date of this letter agreement and the closing of the Loan modification (together with the advances to date, the "**Outstanding Prior Loan Amount**").

**Loan Amount:**

1. Term Tranche Amount:

Immediately prior to the closing of the Loan, the Outstanding Prior Loan Amount will be converted into US Dollars. At the closing of the Loan, Lender will advance an amount sufficient to repay the Outstanding Prior Loan Amount in full. There will be no prepayment penalty for such repayment. The amount advanced for such repayment will become the "**Term Tranche**".

2. Construction Tranche Amount:

Lender will make available up to US$63,000,000, to be advanced approximately as follows:

(a) **Infrastructure Tranche**: Up to US$17,000,000 for infrastructure, utilities, and common components of Buildings F, H and J. Advances under this tranche will be subject to approval by Lender and its cost consultant of a full cost budget for these expenses and acceptable supporting documentation.

(b) **Building F, H and J Tranche**: Up to US$46,000,000 to complete renovations for Building F, H and J, including the addition of 2 additional floors to the building, with funds allocated as Lender shall approve. Borrower shall provide further details delineating costs for the existing improvements as well as for the additional floors. Advances under this tranche will be on a cost-to-complete basis, on the basis of a budget approved by Lender and its cost consultant. Lender will fund costs required to bring Building F to a tenant-ready condition. With respect to Building H and Building J, Lender will only fund costs required to complete the shells of Buildings H and J as approved by Lender's Project Monitor

3

(i.e. completion of superstructures, exterior glazing and roofs tight to the weather). Any further costs for Buildings H or J are conditional on executed binding leases with tenant(s) (each approved by Lender) for no less than 25% of the revised gross floor area of the applicable building (not including Building F).

All funds to be advanced under the Construction Tranche will be advanced on a cost-to-complete basis, in advances of not less than $200,000. Advances will be made not more than once per month. The Lender may withhold a percentage of amounts advanced as required by Texas mechanic's lien legislation and/or as advised by counsel.

3.  Other Amounts:

(a) Approximately US$8,500,000 as an interest reserve and property tax escrow, to be included in the Project budget. If at any time, the reserve is depleted or Lender determines that the reserve will not be sufficient to service interest through to the end of the Loan term and pay property taxes when due, Borrower will be required to replenish the reserve from its own resources in an amount required by Lender.

(b) Approximately US$2,500,000 to pay Lender's fee on the Loan.

(c) Amounts to pay the costs of the transaction.

**Real Estate Security:**

1.  First-ranking Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing on the property described as Lot 1A-B, Resubdivision Plat of Lot 1A, Resubdivision Plat of Lot 1, Motorola Inc. Ed Bluestein Facility, according to the map or plat thereof, recorded in Document No. 200900045, Official Public Records, Travis County, Texas (the "**Austin Property**").

2.  Mortgage/General Assignment of Leases and Rents on Lots 4, 11, and 12 in the Eco-Industrial Business Park, Edmonton, Alberta.

(collectively, the "**Properties**")

**Additional Security and Loan Documents:**

The following security and/or loan documents are required, in form and substance satisfactory to the Lender:

1.  Loan Agreement/Promissory Note in a principal amount of up to $125,000,000.

4

2. Assignments of licenses, permits, development approvals, condominium interests and voting rights, and material agreements in respect of Austin Property and the Project (including but not limited to construction budgets, plans and specifications, construction contracts and subcontracts) and Lots 4, 11 and 12.

3. Pledges of all ownership interests of Borrower and Guarantors.

4. Guaranties and postponements of claim from the Guarantors.

5. First-ranking security interests over the assets and undertaking of each Borrower and Guarantor.

6. Assignment of any payment or reimbursement received by Borrower or any other person from the Texas Department of Transportation, net of any costs incurred in respect thereof;

7. Assignment of any proceeds received via PACE financing, to be used either to pay Project costs or to reimburse Lender (if PACE-allocated costs have been funded by Lender);

8. Cost-overrun and completion guaranty from Borrower and Guarantors (cost overruns will include all interest and fees accrued as a result of Project delays).

9. Lender to be named as a co-obligee/beneficiary on all labor and materials bonds.

10. Environmental indemnity from Borrower and Guarantors.

11. Assignment and subordination of all management agreements for the Properties.

12. Tenant estoppels, attornments and subordination agreements as required by the Lender.

13. Subordination agreements from equity owners of Borrower and Guarantors in respect of all indebtedness and distributions of income and capital.

14. Assignment of Agreements of Purchase and Sale in respect of the "Lamont Assembly".

15. Such other security and loan documents as may be required by the Lender and/or the Lender's counsel.

5

| | |
|---|---|
| Initial Construction Tranche Funding Date: | On or around February 5, 2018, provided that such date is subject to the receipt of all due diligence materials listed in Schedule A, in the Loan Agreement, or otherwise requested by the Lender or its counsel and the satisfaction or waiver of all funding conditions. |
| Interest Rate: | 12% per annum, calculated daily and compounded monthly. |
| Payments: | Interest only, payable monthly in arrears. |
| Escrows: | The Lender may require escrow accounts to be established for property taxes and insurance. |
| Term: | 24 months with a 6-month extension option.  Provided there have been no events of default, the Borrower may exercise the extension option by giving 15 days' prior notice, and paying a fee equal to 1.0% of the then-outstanding Loan amount.  Any extension of the term will be conditioned upon the Loan not exceeding 65% of Lender's estimate of value of the real estate collateral. |
| Prepayment: | Provided there is no uncured event of default, the Borrower may prepay, on a scheduled payment date, all outstanding principal on the Loan plus accrued interest through the date of prepayment. Such prepayment will require one month's written notice in advance of payment and payment of one month's additional interest, as a bonus. |
| Additional Terms: | |

1.   No additional indebtedness will be incurred by the Borrower or Guarantors, and no additional liens will be permitted on any Property or assets of the Borrower or Guarantors without Lender's prior consent and the execution of an acceptable inter-creditor agreement.

2.   The Loan Documents will be drafted to accommodate the possibility that the Loan will revolve in the future, subject to agreement on the terms and conditions.

3.   The closing of this transaction and Loan advances are subject to the Lender having received, approved or been satisfied with, in its sole and absolute discretion, the matters set out in Schedule A.

The Loan Agreement and Loan Documents will contain additional terms, conditions and provisions enhancing and detailing the essence of the basic terms herein set out and not inconsistent therewith.

6

| Fees: | | |
|---|---|---|
| | Loan Administration Fee (annual) | $20,000 |
| | Lender's Fee (estimate) | $2,480,000* |
| | Insurance Risk Management Fee (estimate) | $2,500 |
| | Advance Fee (per advance) | $1,000 |

*calculated as 3% of all amounts other than the Term Tranche, plus 1% of the Term Tranche amount, payable at closing.

Schedule:        Schedule A forms part of this letter agreement.

Confidentiality:  No terms of this letter agreement may be disclosed to any third party without the prior written consent of the Lender.

Expenses:       Borrower will be responsible for all costs and expenses associated with the Loan, including but not limited to, Lender legal fees, title searches and title policies, site inspection expenses, third party contractors or consultants (including the Lender's project monitor), and all closing costs.

Jurisdiction:     The parties agree that this letter agreement shall be interpreted and governed in accordance with the laws of the Province of Ontario.

Expiration
Date:            This letter agreement is open for acceptance until January 25, 2018, after which it shall have no further effect.

If you wish to proceed, please return a signed copy of this letter agreement by the Expiration Date:

This letter agreement may be executed in two or more counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same agreement. Counterparts may be executed and delivered either in original or electronic form.

Yours very truly,

**Romspen Investment Corporation**

By:

Blake Cassidy
Managing Partner

7

We agree to the above noted terms.

Dated at _Toronto_ this _1st_ day of _february_, 2018.

**SYMMETRY ASSET MANAGEMENT INC.**

By: _____

Name: _DAN WHITE_

Its: _DIRECTOR_

_____

**Dan White**

8

## SCHEDULE "A"

### Closing/Disbursement Conditions

1. The execution of Loan Agreement and other definitive loan documents acceptable to the Lender ("Loan Documents").

2. A lender's policy of title insurance for the Properties.

3. BTY's full review and report on the Project.

4. An inspection of the Properties and an interview with the sponsor's key personnel.

5. The uses of the Properties and the Project's financial pro forma.

6. The zoning of the Austin Property.

7. Construction budgets, plans and specifications, schedule, construction contracts and all major subcontracts for the Project.

8. Fully-executed lease with Network Group and the financial capacity of the tenant.

9. A completed condominium declaration and regime for the overall Austin Property development, so that each building has a separate legal description and may be separately sold or refinanced.

10. Site plan for the Austin Property.

11. Insurance on the Properties.

12. Property taxes due and payable having been paid.

13. Disclosure of all non-arm's length or related party contracts, fees, commissions, overhead reimbursements or other payments regarding the Project.

14. Fixed-price contracts with the general contractor.

15. Evidence of compliance with any statutory withholding requirements.

16. Confirmation from Project engineer or architect that all necessary licenses, permits, authorizations from governmental authorities have been obtained, and copies of same.

17. Standard resolutions, certificates and opinions of counsel.

18. Completed Lender's Application Form from Borrower and each Guarantor.

19. Details of ownership structure including formation documents and organizational chart.

20. Financial statements from Borrower for the three most recent full fiscal years and for the fiscal year to date, plus financial statements/PNW statement from each Guarantor.

21. Tax returns from Borrower and each Guarantor for the three most recent years.

22. Copies of all municipal zoning and development entitlements.

23. Fully executed leases, estoppel letters, and subordination, attornment and non-disturbance agreements from Network Group (and any other tenant).

24. A copy of the full cost budget for the Austin Property, all construction contracts, major subcontracts, and any surety bonds.

25. All material contracts for all Properties.

26. A full set of plans and specifications for the Project.

27. A detailed pro forma income and expense model for the Project.

28. A recent environmental report for all Properties.

29. A recent appraisal for all Properties.

30. A structural engineering report for the Austin Property.

31. A current survey of the Properties.

32. Current property tax assessments and proof of payment for all Properties.

33. Receipt of Lender's standard construction draw package and supporting materials, including an acceptable report of Lender's project monitor.

34. Receipt of Lender's standard AML materials.

35. No material adverse change having occurred.

36. No event of default having occurred.

37. Compliance with applicable mechanic's lien legislation.

38. Borrower's and Guarantors' representations and warranties being correct.

39. Acceptable releases in favour of Lender in respect of Loan #8212.

40. Any other items reasonably requested by Lender or its counsel, as outlined on its due diligence checklist to be provided.

41. Other conditions contained in the Loan Documents.

42. Lender's counsel having advised Lender that, having regard to all the circumstances, the advance should be made.