# PROMISSORY NOTE

U.S. $125,000,000.00

April 27, 2018
Austin, Texas

**FOR VALUE RECEIVED**, 3443 ZEN GARDEN LIMITED PARTNERSHIP, a Texas limited partnership, having an address at 4210 Spicewood Springs Road, Suite 205, Austin, Texas 78759 ("**Borrower**"), absolutely and unconditionally promises to pay to the order of ROMSPEN MORTGAGE LIMITED PARTNERSHIP, an Ontario limited partnership, having an address at 162 Cumberland Street, Suite 300, Toronto, Ontario M5R 3N5 ("**Lender**"), the principal sum of ONE HUNDRED TWENTY-FIVE MILLION AND No/100 DOLLARS (U.S. $125,000,000.00), with interest on the unpaid principal balance to be computed from the date of the first disbursement of the Loan proceeds under this Promissory Note (this "**Note**") at the Applicable Interest Rate (defined below), in lawful money of the United States of America, in immediately available funds, which shall at the time of payment be legal tender for payment of all debts and dues, public and private (the "**Loan**"). Repayment of the debt evidenced by this Note is secured by, among other things, (i) that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing executed as of the date hereof Borrower in favor of Lender (the "**Austin Security Instrument**"). Simultaneously herewith, Borrower and Lender have entered into that certain Loan Agreement (as the same may be amended, modified, supplemented, replaced or otherwise modified from time to time, the "**Loan Agreement**").

## PAYMENT OF PRINCIPAL AND INTEREST.

1.1    <u>Payments</u>. The principal, interest and all other sums due under this Note shall be payable at the office of Lender as set forth above, or at such other place as Lender may from time to time designate in writing, as follows:

(a)    Interest on the unpaid balance of the Loan shall accrue at the rate of twelve percent (12%) per annum (the "**Interest Rate**") from and including the date of the first disbursement of the Loan proceeds under this Note until the Maturity Date (defined below), and shall be payable on a monthly basis, in arrears, on each Scheduled Payment Date (defined below). Interest shall not accrue on the Interest Reserve Fund (as defined in Section 6.6 of the Loan Agreement) until such time as such funds are disbursed in accordance with the terms thereof.

(b)    The Loan shall mature on the Maturity Date. The entire outstanding principal balance of this Note, together with all accrued and unpaid interest and any other amounts due under this Note and the other Loan Documents (defined below) shall be due and payable in full on the Maturity Date. Subject to meeting the Maturity Extension Requirements, Borrower may extend the Maturity Date for one (1) additional six (6) month term by exercising the Maturity Extension as set forth herein.

(c)    If this Note is executed on a day other than the first (1st) day of a calendar month, Borrower shall pay to Lender, contemporaneously with the execution of this Note, an interest payment calculated by multiplying (i) the number of days from and including the date of this Note to and including the last day of the current month, by (ii) a daily rate based on the Interest Rate calculated for a 360 day year. Each interest accrual period (the "**Interest Period**") thereafter shall commence on the first (1st) day of each calendar month during the term of the Loan and shall end on the last day of the next occurring calendar month. Commencing on the Scheduled Payment Date occurring June 1, 2018] and on each Scheduled Payment Date thereafter throughout the term of the Loan, Borrower shall make a payment to Lender monthly in arrears of interest accruing on the outstanding principal balance during each Interest Period (each such payment, a "**Monthly Debt Service Payment**").

(d)     All amounts due under this Note and each other Loan Document shall be payable without setoff, counterclaim or any other deduction whatsoever.

(e)     Principal payments shall be made on this Note as provided in <u>Section 2.4</u> of the Loan Agreement.

1.2     <u>Computation</u>.  Interest at the Applicable Interest Rate on the principal sum of this Note shall be calculated on the basis of a three hundred sixty (360) day year and the actual number of days elapsed in such period and shall be compounded monthly.  In computing the number of days during which interest accrues, the day on which funds are advanced shall be included regardless of the time of day such advance is made, and the day on which funds are repaid shall be included unless repayment is credited prior to Lender's close of business.  For the purposes of the Interest Act (Canada) and disclosure thereunder, whenever any interest or any fee to be paid hereunder or in connection herewith is to be calculated on the basis of a 360-day year, the yearly rate of interest to which the rate used in such calculation is equivalent is the rate so used multiplied by the actual number of days in the calendar year in which the same is to be ascertained and divided by 360.  The rates of interest under this Note are nominal rates, and not effective rates or yields.  The principle of deemed reinvestment of interest does not apply to any interest calculation under this Note.

1.3     <u>Determination</u>. Payments under this Note or any other Loan Document made in United States federal funds immediately available in the place designated for payment which are received by Lender prior to 2:00 p.m. local time at said place of payment shall be considered by Lender as having been received prior to close of business, while other payments may, at the option of Lender, not be credited until immediately available to Lender in federal funds in the place designated for payment prior to 2:00 p.m. local time at said place of payment on a day on which Lender is open for business.

1.4     <u>Making of Payments</u>.  Each payment by Borrower hereunder or under the Loan Agreement or any other Loan Document shall be made in immediately available funds to Lender on the date such payment is due to Lender, without presentment, demand, protest or notice of any kind, all such notices being hereby waived and without setoff, counterclaim or other deduction of any nature.  Whenever any payment hereunder or under the Loan Agreement or any other Loan Document shall be stated to be due on a day which is not a Business Day such payment shall be made on the next following Business Day, and, if applicable, interest shall continue to accrue and be payable at the applicable interest rate during such extension.  Borrower shall remit all payments to Lender via an automatic debit service approved by Lender.  For so long as Lender maintains the Interest Reserve, Lender shall pay the Monthly Debt Service Payment from such Interest Reserve on each Scheduled Payment Date.

1.5     <u>Application</u>.  Payments under this Note shall be applied in accordance with Section 2.5 of the Loan Agreement.  No principal amount repaid may be re-borrowed.

1.6     <u>Maturity Grace Period</u>.  If Borrower fails to pay the unpaid balance of the Loan and all unpaid accrued interest thereon on the Maturity Date (other than a Maturity Date arising pursuant to clause (iv) of the definition of Maturity Date), Lender may, at its sole discretion, grant to Borrower a Maturity Grace Period (in lieu of such occurrence being deemed a Default).  During the Maturity Grace Period, the unpaid balance of the Loan shall accrue interest at the Maturity Grace Period Interest Rate, with the unpaid balance of the Loan and all unpaid accrued interest thereon, including interest that accrues during the Maturity Grace Period, being due and payable in full on the last day of the Maturity Grace Period.  There shall be no more than one (1) Maturity Grace Period.  If Lender grants a Maturity Grace Period to Borrower, the Maturity Grace Period Fee shall automatically be added to the outstanding balance of the Loan.  Borrower's failure to pay the unpaid balance of the Loan and all unpaid accrued interest on the first day after the expiration of the Maturity Grace Period shall constitute a Default.

1.7     <u>Definitions</u>.  All capitalized terms used in this Note without definition shall have the meanings assigned to such terms in the Loan Agreement, all of the terms of such Loan Agreement being hereby incorporated into and made part of this Note by reference for all purposes.  Additionally, for purposes of this Note, the following terms shall have the following meanings:

"**Applicable Interest Rate**" shall mean the Interest Rate, the Default Rate, or the Maturity Grace Period Interest Rate, as applicable.

"**Banking Day**" shall mean a day on which the Toronto, Ontario, head office for the Royal Bank of Canada is open for business and which is not a Saturday, Sunday, civic or statutory holiday in Canada.

"**Business Day**" shall mean a day on which commercial banks are not authorized or not required by law to close in the State of New York or in the State where the Property is located.

"**Default Rate**" has the meaning given thereto in <u>Section 2.3</u>.

"**Interest Period**" has the meaning given thereto in <u>Section 1.1(c).</u>

"**Interest Rate**" has the meaning given thereto in <u>Section 1.1(a).</u>

"**Loan Agreement**" has the meaning given thereto in the recitals above.

"**Maturity Date**" shall mean (i) if not extended pursuant to the Maturity Extension, May 1, 2020, (ii) if extended pursuant to the Maturity Extension, November 1, 2020, or (iii) any earlier date on which Lender's obligation to make disbursements of the Loan has been terminated and the Loan has been accelerated, in each case pursuant to the terms of the Loan Agreement.

"**Maturity Extension**" shall mean that Lender has determined that Borrower has timely satisfied all Maturity Extension Requirements prior to April 16, 2020, and Lender has extended the Maturity Date from May 1, 2020 to November 1, 2020.

"**Maturity Extension Requirements**" shall collectively mean the following:

(i)     Delivery by Borrower to Lender of written notice no less than fifteen (15) days prior to the applicable Maturity Date (the "**Maturity Extension Notice**") that Borrower seeks to exercise the Maturity Extension;

(ii)     Delivery by Borrower to Lender no later than the applicable Maturity Date of an extension fee in immediately available funds in an amount equal to one-half of one percent (0.5%) of the then outstanding principal balance of the Loan; and

(iii)     No uncured Default remains outstanding.

"**Maturity Grace Period Interest Rate**" shall mean an interest rate that is the greater of :(i) the Interest Rate and (ii) the Royal Bank of Canada Prime Rate per annum, plus five percent (5%); as determined on the first (1st) Banking Day of the month in which the Maturity Date occurs.

"**Maturity Grace Period**" shall mean the period from the Maturity Date through and including the date that is one (1) month from the Maturity Date.  There shall be no Maturity Grace Period available to Borrower if the Maturity Date arises pursuant to clause (ii) of the definition of Maturity Date.

"**Maturity Grace Period Fee**" shall mean an amount equal to the greater of (i) $5,000.00, and (ii) one percent (1%) of the then outstanding principal balance of the Loan.

"**Prepayment Premium**" means payment in immediately available funds in the amount of the most recent Monthly Debt Service Payment.

"**Royal Bank of Canada Prime Rate**" means the rate of interest, expressed as a percentage per annum, published and quoted by the Royal Bank of Canada's Toronto, Ontario, Head Office and which is commonly known as the prime lending rate for commercial loans in Canadian Dollars.

"**Scheduled Payment Date**" shall mean the first (1st) day of each calendar month, or if such first (1st) day is not a Business Day, the next Business Day.

2.     **DEFAULT**.

2.1    Late Fee.  If any principal, interest or any other sum due under this Note or the other Loan Documents (other than the payment of principal during the Maturity Grace Period) is not paid by Borrower on the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by any Legal Requirements, in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of such delinquent payment.  Any such amount shall be secured by the Security Instruments and the other Loan Documents. Lender shall not have the right to impose any Late Fee for so long as there are sufficient funds in the Interest Reserve to pay any Debt Service Payment on its Scheduled Payment Date.

2.2    Remedies.  The entire outstanding principal sum of this Note, together with all interest accrued and unpaid thereon and all other sums due under this Note, the Security Instruments, or any of the other Loan Documents, or any portion thereof, including without limitation, any amounts described in Section 12.9 of the Loan Agreement shall without notice become immediately due and payable at the option of Lender upon the Lender's declaration of Default.  Time is of the essence in this Note, the Security Instruments and the other Loan Documents.  All of the terms, covenants and conditions contained in the Security Instruments and the other Loan Documents are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein.  All payments from Borrower to Lender following the declaration of a Default shall be applied in such order and manner as Lender elects in reduction of costs, expenses, charges, disbursements and fees payable by Borrower hereunder or under any other Loan Document, in reduction of interest due on the outstanding principal balance of the Loan, or in reduction thereof.  Lender may, without notice to Borrower or any other person, accept one or more partial payments of any sums due or past due hereunder from time to time while a Default exists hereunder, after Lender accelerates the indebtedness evidenced hereby, and/or after Lender commences enforcement of its remedies under any Loan Document or applicable law, without thereby waiving any Default, rescinding any acceleration, or waiving, delaying, or forbearing in the pursuit of any remedies under the Loan Documents.  Lender may endorse and deposit any check or other instrument tendered in connection with such a partial payment without thereby giving effect to or being bound by any language purporting to make acceptance of such instrument an accord and satisfaction of the indebtedness evidenced hereby.

2.3    Default Rate.  Upon the declaration of a Default by Lender under this Note, and following the expiration of the applicable cure period (if any) as to such Default (each of the foregoing a "**Default**"), Lender shall be entitled to receive and Borrower shall pay interest on the entire unpaid principal sum at the Interest Rate plus five percent (5%) (the "**Default Rate**").  The Default Rate shall be automatically computed from the occurrence of the Default until the actual receipt and collection of this Note in full or, if permitted by Lender (of which Lender has no obligation to do so), the date such Default is cured.  This charge shall be added to this Note, and shall be deemed secured by the Security Instruments and the other Loan Documents.  Borrower agrees that Lender's right to collect interest at the Default Rate is given for the purpose of compensating Lender at reasonable amounts for Lender's added costs and expenses that occur as a result of Borrower's default and that are difficult to predict in amount, such as increased general overhead, concentration of management resources on problem loans, and increased cost of funds.  Lender and Borrower agree that Lender's collection of interest at the Default Rate is not a fine or penalty, but is intended to be and shall be deemed to be reasonable compensation to Lender for increased costs and expenses that Lender will incur if there occurs a Default hereunder.  Collection of interest at the Default Rate shall not be construed as an agreement or privilege to extend the Maturity Date or to limit or impair any rights and remedies of Lender under any Loan Documents.  In the event the Default Rate would otherwise exceed the maximum rate permitted by applicable law, the Default Rate shall be the maximum rate permitted by applicable law.

2.4    Post-Judgment.  Interest shall accrue on any judgment obtained by Lender in connection with the enforcement or collection of this Note or the other Loan Documents (including foreclosure of the Security Instruments) until such judgment amount is irrevocably paid in full at a rate equal to the greater of (a) the Default Rate or (b) the highest legal rate applicable to judgments within such jurisdiction; provided, however,

that interest shall not accrue at a rate in excess of the maximum rate of interest, if any, which may be charged by Lender or collected from Borrower under applicable law.

2.5     <u>Remedies Cumulative</u>.  The remedies available to Lender under this Note and in the other Loan Documents, or at law or in equity, shall be cumulative and concurrent, and may be pursued singly, successively or together in Lender's sole discretion and as often as occasion therefor shall arise.

3.     **PREPAYMENT**.

3.1     <u>Prepayment</u>.

(a)     Except as set forth in <u>Sections 3.1(b)</u> and <u>3.1(c)</u>, Borrower shall not have the right to prepay the Loan in whole or in part prior to the Maturity Date.

(b)     At any time prior to the Maturity Date, Borrower shall have the right to prepay the Loan, in whole or in part, without premium or penalty as a result of payments made pursuant to Section 2.3 of the Loan Agreement.

(c)     On any Scheduled Payment Date during the term of the Loan, so long as no Default shall have occurred and be continuing, Borrower may, at its option and upon not less than thirty (30) days prior notice to Lender, prepay the outstanding principal balance of the Loan in whole only (and not in part) with payment of the Prepayment Premium.  If after notifying Lender of its intent to prepay, Borrower revokes such prior notice or fails to make such prepayment on the date specified in such notice, Borrower shall pay all actual costs and expenses incurred by Lender as a result of such failure or revocation. Any prepayment received by Lender under this Section shall, in addition to the outstanding principal balance of the Loan and the Prepayment Premium, also be accompanied by (a) if for any reason such prepayment does not occur on a Scheduled Payment Date, all interest which would have accrued on the principal amount prepaid through, but not including, the next occurring Scheduled Payment Date, (b) all other sums due and payable under the Loan Documents, and (c) all reasonable out-of-pocket costs and expenses incurred by Lender in connection with such prepayment.  Borrower acknowledges that Lender has made the Loan to Borrower in reliance on the actual receipt over time of the principal and interest as applicable as agreed to by Borrower herein and that Lender will incur additional costs and expenses in the event of a prepayment of the Loan and that the Prepayment Premium is reasonable and is a bargained for consideration and not a penalty and the terms of the Loan are in various respects more favorable to Borrower than they would have been absent Borrower's agreement to pay the Prepayment Premium as provided herein.  Borrower agrees that Lender shall not, as a condition to receiving the Prepayment Premium, be obligated to actually reinvest the amount prepaid in any treasury obligation or in any other manner whatsoever.  Nothing contained herein shall be deemed to be a waiver by Lender of any right it may have to require specific performance of any obligation of Borrower hereunder.

3.2     <u>Prepayment Upon Default</u>.  If following the Lender's declaration of Default, Lender shall accelerate the Loan, Borrower shall pay to Lender all amounts payable under this Note and the other Loan Documents.  If Borrower shall tender payment of an amount sufficient to satisfy the Debt at any time prior to a sale of the Property, either through foreclosure or the exercise of the other remedies available to Lender under the Loan Documents, such tender by Borrower shall be deemed to be voluntary and Borrower shall pay all amounts due and payable under the Loan Documents, including without limitation, amounts described in <u>Section 3.1</u>.

4.     **SECURITY**.  The indebtedness evidenced by this Note is governed by the Loan Agreement and the obligations created hereby (including without limitation the amounts authorized by <u>Section 2</u> to be collected by Lender) are secured by, among other things, the Security Instruments and other Loan Documents.

5.     **GENERAL**

5.1     <u>Written Amendment Only</u>.  This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by Borrower and Lender.

5.2     <u>Certain Waivers</u>.  Except for any notices specifically required by the Loan Agreement, Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, protest and notice of protest, notice of non-payment, notice of acceleration, and notice of intent to accelerate the maturity hereof (and of such acceleration).  No release of any security for the Loan or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note or the other Loan Documents made by agreement between Lender and any other Person shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, or any other Person who may become liable for the payment of all or any part of the Debt, under this Note and the other Loan Documents.  Lender may release any guarantor or indemnitor of the Loan from liability, in every instance without the consent of the Borrower hereunder, and without waiving any rights the Lender may have hereunder, the other Loan Documents or by virtue of the laws of the State in which the Property is located or any other state of the United States.

5.3     <u>Severability</u>.  If any provision or obligation under this Note and the other Loan Documents shall be determined by a court of competent jurisdiction to be invalid, illegal or unenforceable, that provision shall be deemed severed from the Loan Documents and the validity, legality and enforceability of the remaining provisions or obligations shall remain in full force as though the invalid, illegal, or unenforceable provision had never been a part of the Loan Documents.

5.4     <u>Notices</u>.  All notices or other written communications hereunder shall be given and become effective as provided in Section 12.5 of the Loan Agreement.

5.5     <u>Set-Off Preference</u>.  Borrower is and shall be obligated to pay principal, interest and any and all other amounts which become payable hereunder or under the other Loan Documents absolutely and unconditionally and without any abatement, postponement, diminution or deduction and without any reduction for counterclaim or setoff.  In the event that at any time any payment received by Lender hereunder shall be deemed by a court of competent jurisdiction to have been a voidable preference or fraudulent conveyance under any bankruptcy, insolvency or other debtor relief law, then the obligation to make such payment shall survive any cancellation or satisfaction of this Note or return thereof to Borrower and shall not be discharged or satisfied with any prior payment thereof or cancellation of this Note, but shall remain a valid and binding obligation enforceable in accordance with the terms and provisions hereof, and such payment shall be immediately due and payable upon demand.

5.6     <u>Successors and Assigns</u>.  The terms and provisions hereof shall be binding upon and inure to the benefit of Borrower and Lender and their respective heirs, executors, legal representatives, successors, successors-in-title and permitted assigns, whether by voluntary action of the parties or by operation of law.  As used in this Note and the other Loan Documents, the terms "**Borrower**" and "**Lender**" shall be deemed to include their respective heirs, executors, legal representatives, successors, successors-in-title and permitted assigns (no right to assign on the part of Borrower being implied hereby), whether by voluntary action of the parties or by operation of law.

5.7     <u>Joint and Several</u>.  If Borrower consists of more than one Person, each shall be jointly and severally liable for the Obligations.

5.8     <u>Interpretation</u>.  Sections 1.2, 12.18, and 12.19 of the Loan Agreement are hereby incorporated into this Note by reference for all purposes.

5.9     <u>WAIVER OF TRIAL BY JURY</u>.  **BORROWER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS NOTE, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO**

**TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.**

5.10    <u>GOVERNING LAW</u>.  Except as otherwise expressly set forth herein, this Note shall be governed, construed, applied and enforced in accordance with the laws of the state where the Property described in the Austin Security Instrument is located without regard to the conflicts of law provisions thereof ("**Governing State**").  Borrower and Lender hereby consent to personal jurisdiction in the Governing State. JURISDICTION AND VENUE OF ANY ACTION BROUGHT TO ENFORCE THIS NOTE OR ANY OTHER LOAN DOCUMENT OR ANY ACTION RELATING TO THE TERM LOAN OR THE RELATIONSHIPS CREATED BY OR UNDER THE LOAN DOCUMENTS ("**ACTION**") SHALL, AT THE ELECTION OF LENDER, BE IN (AND IF ANY ACTION IS ORIGINALLY BROUGHT IN ANOTHER VENUE, THE ACTION SHALL AT THE ELECTION OF LENDER BE TRANSFERRED TO) A STATE OR FEDERAL COURT OF APPROPRIATE JURISDICTION LOCATED IN THE GOVERNING STATE. BORROWER AND LENDER HEREBY CONSENT AND SUBMIT TO THE PERSONAL JURISDICTION OF THE STATE COURTS OF THE GOVERNING STATE AND OF FEDERAL COURTS LOCATED IN THE GOVERNING STATE IN CONNECTION WITH ANY ACTION AND HEREBY WAIVES ANY AND ALL PERSONAL RIGHTS UNDER THE LAWS OF ANY OTHER STATE OR COUNTRY TO OBJECT TO JURISDICTION WITHIN SUCH GOVERNING STATE FOR PURPOSES OF ANY ACTION.  Borrower hereby waives and agrees not to assert, as a defense to any Action or a motion to transfer venue of any Action, (i) any claim that it is not subject to such jurisdiction, (ii) any claim that any Action may not be brought against it or is not maintainable in those courts or that this Note may not be enforced in or by those courts, or that it is exempt or immune from execution, (iii) that the Action is brought in an inconvenient forum, or (iv) that the venue for the Action is in any way improper.

5.11    <u>Expenses</u>.  Borrower shall pay Lender, on demand, all Administration and Enforcement Expenses (as hereinafter defined) now or hereafter incurred by Lender, together with interest thereon at the Default Rate, from the date paid or incurred by Lender until such fees and expenses are paid by Borrower, whether or not a Default then exists.  For the purpose of this Note, "**Administration and Enforcement Expenses**" shall mean all fees and expenses incurred at any time or from time to time by Lender, including reasonable legal (whether for the purpose of advice, negotiation, documentation, defense, enforcement or otherwise), accounting, financial advisory, auditing, rating agency, appraisal, valuation, title or title insurance, engineering, environmental, collection agency, or other expert or consulting or similar services, in connection with: (a) the origination of the Loan, including the negotiation and preparation of the Loan Documents and any amendments or modifications of the Loan or the Loan Documents, whether or not consummated; (b) the administration, servicing or enforcement of the Loan or the Loan Documents, including any request for interpretation or modification of the Loan Documents or any matter related to the Loan or the servicing thereof (which shall include the consideration of any requests for consents, waivers, modifications, approvals, lease reviews or similar matters and any proposed transfer of the Property or any interest therein), (c) any litigation, contest, dispute, suit, arbitration, mediation, proceeding or action (whether instituted by or against Lender, including actions brought by or on behalf of Borrower or Borrower's bankruptcy estate or any indemnitor or guarantor of the Loan or any other person) in any way relating to the Loan or the Loan Documents including in connection with any bankruptcy, reorganization, insolvency, or receivership proceeding; (d) any attempt to enforce any rights of Lender against Borrower or any other person that may be obligated to Lender by virtue of any Loan Document or otherwise whether or not litigation is commenced in pursuance of such rights; and (e) protection, enforcement against, or liquidation of the Property or any other collateral for the Loan, including any attempt to inspect, verify, preserve, restore, collect, sell, liquidate or otherwise dispose of or realize upon the Loan, the Property or any other collateral for the Loan.  Administration and Enforcement Expenses shall be limited to reasonable fees and expenses, provided, however, charges of governmental entities or other third parties that are outside of the control of Lender shall not be subject to the reasonableness standard.  All Administration and Enforcement Expenses shall be additional Debt hereunder secured by the Property, and may

be funded, if Lender so elects, by Lender paying the same to the appropriate persons and thus making an advance on Borrower's behalf.

5.12    Avoidance of Debt Payments.  To the extent that any payment to Lender and/or any payment or proceeds of any collateral received by Lender in reduction of the Debt is subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, to Borrower (or Borrower's successor) as a debtor in possession, or to a receiver, creditor, or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then the portion of the Debt intended to have been satisfied by such payment or proceeds shall remain due and payable hereunder, be evidenced by this Note, and shall continue in full force and effect as if such payment or proceeds had never been received by Lender whether or not this Note has been marked "paid" or otherwise cancelled or satisfied and/or has been delivered to Borrower, and in such event Borrower shall be immediately obligated to return the original Note to Lender and any marking of "paid" or other similar marking shall be of no force and effect.

5.13    Miscellaneous.  Neither this Note nor any of the terms hereof, including the provisions of this Section, may be terminated, amended, supplemented, waived or modified orally, but only by an instrument in writing executed by the party against which enforcement of the termination, amendment, supplement, waiver or modification is sought, and the parties hereby:  (a) expressly agree that it shall not be reasonable for any of them to rely on any alleged, non-written amendment to this Note; (b) irrevocably waive any and all right to enforce any alleged, non-written amendment to this Note; and (c) expressly agree that it shall be beyond the scope of authority (apparent or otherwise) for any of their respective agents to agree to any non-written modification of this Note.  This Note may be executed in several counterparts, each of which counterpart shall be deemed an original instrument and all of which together shall constitute a single Note.  The failure of any party hereto to execute this Note, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.  As used in this Note, (i) the terms "include," "including" and similar terms shall be construed as if followed by the phrase "without being limited to," (ii) any pronoun used herein shall be deemed to cover all genders, and words importing the singular number shall mean and include the plural number, and vice versa, (iii) all captions to the Sections hereof are used for convenience and reference only and in no way define, limit or describe the scope or intent of, or in any way affect, this Note, (iv) no inference in favor of, or against, Lender or Borrower shall be drawn from the fact that such party has drafted any portion hereof or any other Loan Document, (v) the words "Lender" and "Borrower" shall include their respective successors (including, in the case of Borrower, any subsequent owner or owners of the Property or any part thereof or any interest therein and Borrower in its capacity as debtor-in-possession after the commencement of any bankruptcy proceeding), assigns, heirs, personal representatives, executors and administrators, (vi) the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or," (vii) the words "hereof," "herein," "hereby," "hereunder," and similar terms in this Note refer to this Note as a whole and not to any particular provision or section of this Note, (viii) a Default shall "continue" or be "continuing" until such Default has been waived in writing by Lender, and (ix) in the computation of periods of time from a specified date to a later date, the word "from and including" and the words "to" and "until" each means "to but excluding."  Wherever Lender's judgment, consent, approval or discretion is required under this Note or Lender shall have an option, election, or right of determination or any other power to decide any other matter relating to the terms of this Note, including any right to determine that something is satisfactory or not ("**Decision Power**"), such Decision Power shall be exercised in the sole and absolute discretion of Lender except as may be otherwise expressly and specifically provided herein.  Such Decision Power and each other power granted to Lender upon this Note or any other Loan Document may be exercised by Lender or by any authorized agent of Lender (including any servicer and/or attorney-in-fact), and Borrower hereby expressly agrees to recognize the exercise of such Decision Power by such authorized agent.  In the event of a conflict between or among the terms, covenants, conditions or provisions of the Loan Documents, the term(s), covenant(s), condition(s) and/or provision(s) that Lender may elect to enforce from time to time so as to enlarge the interest of Lender in its security, afford Lender the maximum financial benefits or security for the Debt, and/or provide Lender the maximum assurance of payment of the Debt in full shall control.  Capitalized terms used herein shall, unless otherwise defined herein, have the meanings set forth in the Loan Agreement. BORROWER AND LENDER EACH ACKNOWLEDGE AND AGREE THAT IT HAS BEEN PROVIDED WITH SUFFICIENT AND

NECESSARY TIME AND OPPORTUNITY TO REVIEW THE TERMS OF THIS NOTE, THE SECURITY INSTRUMENTS, AND EACH OF THE LOAN DOCUMENTS, WITH ANY AND ALL COUNSEL IT DEEMS APPROPRIATE, AND THAT NO INFERENCE IN FAVOR OF, OR AGAINST, LENDER OR BORROWER SHALL BE DRAWN FROM THE FACT THAT EITHER SUCH PARTY HAS DRAFTED ANY PORTION HEREOF, OR THE SECURITY INSTRUMENTS, OR ANY OF THE LOAN DOCUMENTS.

5.14    <u>Usury Savings</u>.  It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with the applicable Texas law governing the maximum rate of interest payable on the indebtedness evidenced by this Note, the Loan Agreement, and the Related Debt (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law).  If the applicable law is ever judicially interpreted so as to render usurious any amount (i) contracted for, charged, taken, reserved or received pursuant to this Note, the Loan Agreement, any of the other Loan Documents or any other communication or writing by or between Borrower and Lender related to the transaction or transactions that are the subject matter of the Loan Documents, (ii) contracted for, charged, taken, reserved or received by reason of Lender's exercise of the option to accelerate the maturity of this Note and/or the Related Debt, or (iii) Borrower will have paid or Lender will have received by reason of any voluntary prepayment by Borrower of this Note and/or the Related Debt, then it is Borrower's and Lender's express intent that all amounts charged in excess of the Maximum Lawful Rate shall be automatically canceled, ab initio, and all amounts in excess of the Maximum Lawful Rate theretofore collected by Lender shall be credited on the principal balance of this Note and/or the Related Debt (or, if this Note and all Related Debt have been or would thereby be paid in full, refunded to Borrower), and the provisions of this Note, the Loan Agreement, and other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity for the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if this Note has been paid in full before the end of the stated term of this Note, then Borrower and Lender agree that Lender shall, with reasonable promptness after Lender discovers or is advised by Lender that interest was received in an amount in excess of the Maximum Lawful Rate, either refund such excess interest to Lender and/or credit such excess interest against this Note and/or any Related Debt then owing by Borrower to Lender.  Borrower hereby agrees that as a condition precedent to any claim seeking usury penalties against Lender, Borrower will provide written notice to Lender, advising Lender in reasonable detail of the nature and amount of the violation, and Lender shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Borrower or crediting such excess interest against this Note and/or the Related Debt then owing by Borrower to Lender.  All sums contracted for, charged, taken, reserved or received by Lender for the use, forbearance or detention of any debt evidenced by this Note and/or Related Debt shall, to the extent permitted by applicable law, be amortized or spread, using the actuarial method, throughout the stated term of this Note and/or Related Debt (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of this Note and/or the Related Debt does not exceed the Maximum Lawful Rate from time to time in effect and applicable to this Note and/or the Related Debt for so long as debt is outstanding.  In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to this Note and/or Related Debt.  Notwithstanding anything to the contrary contained herein or in any other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.  To the extent that Lender is relying on Chapter 303 of the Texas Finance Code to determine the Maximum Lawful Rate payable on the Note and/or the Related Debt, Lender will utilize the weekly ceiling from time to time in effect as provided in such Chapter 303, as amended.  To the extent United States federal law permits Lender to contract for, charge, receive or reserve a greater amount of interest than under Texas law, Lender will rely on United States federal law instead of such Chapter 303 for the purpose of determining the Maximum Lawful Rate.  Additionally, to the extent permitted by applicable law now or hereafter in effect, Lender may, at its option and from time to time, utilize any other method of establishing the Maximum Lawful Rate under such Chapter 303 or under applicable law by giving notice, if required, to Borrower as provided by applicable law now or hereafter in effect.  As used hereunder the term

"**Maximum Lawful Rate**" shall mean the maximum lawful rate of interest which may be contracted for, charged, taken, received or reserved by Lender in accordance with the applicable laws of the State of Texas (or applicable United States federal law to the extent that such law permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law), taking into account all Charges made in connection with the transaction evidenced by this Note and the other Loan Documents.  As used hereunder, the term "**Charges**" shall mean all fees, charges and/or any other things of value, if any, contracted for, charged, taken, received or reserved by Lender in connection with the transactions relating to this Note and the other Loan Documents, which are treated as interest under applicable law.  As used hereunder, the term "**Related Debt**" shall mean any and all indebtedness paid or payable by Borrower to Lender pursuant to the Loan Documents or any other communication or writing by or between Borrower and Lender related to the transaction or transactions that are the subject matter of the Loan Documents, except such indebtedness which has been paid or is payable by Borrower to Lender under this Note.  In addition, if any provision of this Note would oblige the Borrower to make any payment of interest or other amount payable to any Lender in an amount or calculated at a rate which would be prohibited by any applicable law or would result in a receipt by that Lender of "interest" at a "criminal rate" (as such terms are construed under the Criminal Code (Canada)), then, notwithstanding such provision, such amount or rate shall be deemed to have been adjusted with retroactive effect to the maximum amount or rate of interest, as the case may be, as would not be so prohibited by applicable law or so result in a receipt by that Lender of "interest" at a "criminal rate", such adjustment to be effected, to the extent necessary (but only to the extent necessary), as follows:

(i)      first, by reducing the amount or rate of interest required to be paid to the Lender; and

(ii)     thereafter, by reducing any fees, commissions, costs, expenses, premiums and other amounts required to be paid to the affected Lender which would constitute interest for purposes of Section 347 of the Criminal Code (Canada) or the laws of the State of Texas.

5.15    <u>Exculpation</u>.  The Debt shall be fully recourse to Borrower, and Borrower shall be fully personally liable for all of the Debt.

5.16    <u>Final Agreement</u>.    THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**[SEPARATE SIGNATURE PAGE FOLLOWS.]**

IN WITNESS WHEREOF, Borrower has duly executed this Note the day and year first above written.

**BORROWER:**

**3443 ZEN GARDEN LIMITED PARTNERSHIP,**
a Texas limited partnership

By     3443 Zen Garden GP LLC,
      a Texas limited liability company, its general partner

      By: _____
      Name: _DIRECTOR_____
      Title: _DAN WHITE_____

STATE OF _Panama_ )
                    ) ss.
COUNTY OF _Panama_ )

The foregoing instrument was acknowledged before me this _16_ day of _APRIL_____, 2018, by _DAN WHITE_____ as _DIRECTOR_____ of 3443 Zen Garden GP LLC, a Texas limited liability company and general partner of 3443 Zen Garden Limited Partnership, a Texas limited partnership, on behalf of such limited partnership.

Witness my hand and official seal.

My commission expires _July 1, 2019_.

                                  Licda. Norma Marlenis Velasco C.
                                     Twelfth Notary Public
                                        Notary Public

61454260.2

IN WITNESS WHEREOF, Borrower has duly executed this Note the day and year first above written.

**BORROWER:**

**3443 ZEN GARDEN LIMITED PARTNERSHIP,**
a Texas limited partnership

By    3443 Zen Garden GP LLC,
       a Texas limited liability company, its general partner

By: _Adam Zarafshani_ (signature)
Name: _Adam Zarafshani_
Title: _President_

STATE OF _Texas_ )
                              ) ss.
COUNTY OF _Travis_ )

The foregoing instrument was acknowledged before me this _16_ day of _April_, 2018, by _Adam Zarafshani_ as _____ of 3443 Zen Garden GP LLC, a Texas limited liability company and general partner of 3443 Zen Garden Limited Partnership, a Texas limited partnership, on behalf of such limited partnership.

Witness my hand and official seal.

My commission expires _3-15-2022_.

_Brittney Garcia_ (signature)
Notary Public

[Notary Seal: BRITTNEY LEANN GARCIA, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES 03-15-2022, ID # 128118689]

BORROWER SIGNATURE PAGE TO PROMISSORY NOTE